UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | Case No.: 3:18cr5 (VAB) |
| | : | |
| v. | : | |
| | : | |
| | : | |
| CANDACE RISPOLI | : | May 21, 2019 |

**GOVERNMENT'S MEMORANDUM IN AID OF SENTENCING**

The Court has scheduled sentencing in this matter for May 28, 2019. The Government respectfully submits that a sentence within the parties' agreed upon advisory guidelines range of 27 to 33 months' imprisonment is appropriate and represents a balanced consideration of the sentencing factors set forth in 18 U.S.C. § 3553(a).

**I.   BACKGROUND**

   **A.  Factual Background**

Rispoli began working for Lodestone Management, later known as Infosys Consulting (the "Company"), in late-January 2012. Less than three months later, she began a years-long scheme to embezzle from the Company by improperly using its American Express credit card ("AMEX"). Rispoli continued that scheme until she was laid off in June 2016 and no longer had access to the AMEX, by which time she had stolen over $1 million.

Rispoli embezzled from the Company in two ways.

First, Rispoli fraudulently charged personal expenses and expenses of her then-boyfriend, Michael Miano, on the Company's AMEX, funding their extravagant lifestyle. These charges included rental cars, airline tickets, hotel reservations, meals, and luxury items. It also included several thousand-dollar orders for custom t-shirts; Rispoli designed a t-shirt to support her cousin Nick Fradiani while he was an American Idol contestant, billed the production costs to the Company, and sold them for a profit. In total, these fraudulent charges amounted to more than $250,000.

Second, Rispoli used the AMEX to fraudulently transfer more than $800,000 of the Company's money to her or Miano's PayPal and Venmo accounts. Notably, Rispoli set up the PayPal account—which she controlled—using the name of another Company employee in order to hide her scheme.

Rispoli also took other complex steps to conceal her embezzlement from the Company. She was required by the Company to submit the AMEX statements to the Company's accounting firm. To hide her fraudulent charges, Rispoli doctored those AMEX statements, changing the merchant description and/or the dollar amount, before emailing it to the Company's accounting firm. Eventually, Rispoli stopped sending altered AMEX statements and instead created false billing summaries in Excel, which she emailed to the Company's accounting firm. Rispoli's concealment was so effective that her embezzlement was not detected by the Company until after she was laid off in June 2016, when it found suspicious charges in the course of preparing her severance.

**B. Procedural Background**

On June 25, 2018, Rispoli pled guilty to a one-count Indictment charging wire fraud in violation of 18 U.S.C. § 1343. Rispoli entered into a written plea agreement that included a guideline stipulation. The parties agreed that under U.S.S.G. § 2B1.1(a)(1), Rispoli had a base offense level of seven (7). The parties agreed that 14 levels should be added under § 2B1.1(b)(1)(H) because the loss was more than $550,000 but less than $1,500,000. The Government agreed to recommend that the Court reduce by two levels Rispoli's adjusted offense level under § 3E1.1 and an additional level pursuant to § 3E1.1(b). The parties agreed that the total offense level is 18. The parties agreed that Rispoli was in Criminal History Category I, resulting in an advisory sentencing range of 27 to 33 months' imprisonment and a fine of $10,000 to $100,000. The parties also agreed that Rispoli would make restitution in an amount not less than $1,098,176.

## II. DISCUSSION

Consideration of the Sentencing Guidelines and the statutory factors in 18 U.S.C. § 3553(a) demonstrate that the defendant's crime warrants a period of imprisonment consistent with the guidelines range described above and outlined in the parties' plea agreement. A downward departure under Section 5K2.13 is unwarranted. The Government acknowledges Rispoli's status as a first-time offender and her acceptance of responsibility, but both are already taken into account by the Sentencing Guidelines. Likewise, the Government does not dispute that there are personal circumstances that the Court should consider. Nonetheless, a sentence in

the range of 27 to 33 months' imprisonment is appropriate under the circumstances of Rispoli's offense.

### A. Downward Departure Under Section 5K2.13 Is Unwarranted

1. Applicable Law

While "[m]ental and emotional conditions are not ordinarily relevant in determining whether a sentence should be outside the applicable range," U.S.S.G. § 5H1.3, a district court can exercise its discretion to grant a downward departure on the ground of diminished capacity if "(1) the defendant committed the offense while suffering from a significantly reduced mental capacity; and (2) the significantly reduced mental capacity contributed substantially to the commission of the offense," U.S.S.G. § 5K2.13. The defendant must prove both elements by a preponderance of the evidence. *United States v. Valdez*, 426 F.3d 178, 184 (2d Cir. 2005).

With respect to the first prong, the standard for determining "significantly reduced mental capacity" is not whether the defendant can recognize the difference between right and wrong, but rather that her "diminished mental capacity impaired [her] judgment or [her] ability to understand the wrongfulness of [her] actions." *Id.* Offense conduct that is complex and spans a substantial period of time militates against a finding that the defendant suffered from a significantly reduced mental capacity. *See id.* at 185 (acknowledging defendant's emotional and mental impairments but concluding that because his wire fraud scheme involved "hundreds of written records" showing a complex fraud that lasted multiple years, his impairments were not severe enough to support a downward departure); *United*

*States v. Kottage*, 510 Fed. Appx. 23, 25 (2d Cir. 2013) (affirming district court's refusal to downward depart despite evidence of bipolar disorder because defendant's wire fraud scheme "involved deviousness, deceit . . . [a]nd conscious behavior on [defendant's] part").

As for the second prong, the reduced mental capacity must have contributed substantially to the commission of the offense. *See United States v. Qualls*, 613 F. App'x. 25, 30 (2d Cir. 2015). In cases where courts have granted downward departures, the causal link between diminished capacity and the commission of the charged offense has been direct. *See United States v. Santa*, No. 05-cr-649, 2008 WL 265560, at *3 (E.D.N.Y. May 14, 2008) (holding that defendant's mental retardation meant he was easily influenced and manipulated by others, which was a direct cause of his involvement in narcotics trafficking); *United States v. Tanasi*, No. 02-cr-96, 2004 WL 406724, at *2 (S.D.N.Y. Mar. 3 2004) (finding a causal connection where defendant's obsessive and compulsive behavior regarding adult pornography led to his involvement in child pornography).

    2. Discussion

Rispoli seems to have mental health issues stemming from the Boston Marathon bombing, which she witnessed. However, she has failed to show a causal link between her post-traumatic stress disorder ("PTSD") and her systematic, recurring, and well-concealed defrauding of the Company.

First, the evidence shows that she began her embezzlement scheme prior to April 15, 2013, the day of the marathon. This fact alone should be dispositive.

Second, Dr. Grove's analysis does not conclude that her mental illness compelled her to embezzle and manipulate records to hide her conduct. At best, Dr. Grove's conclusions establish that Rispoli's mental illness allowed her to conduct the fraud without feeling a sense of guilt. Based on the length and extent of Rispoli's scheme, any observer would agree that she had no remorse while stealing from the Company.

Third, contrary to Rispoli's present claim that her PTSD resulted in a "detachment" from her "computerized transactions" that made them seem "unreal," Def.'s Sentencing Memo at 8, her scheme was not simply a matter of pushing a few buttons, but was methodically and purposefully planned and executed. Rispoli repeatedly chose to use the Company's AMEX to charge personal expenses; each of these purchases required a deliberate decision to use the Company's AMEX. Rispoli also chose to use that AMEX to operate what was essentially a risk-free t-shirt business for a short period of time, one in which the Company bore all the costs and Rispoli kept all the profits. Every month for a period of years, Rispoli chose to falsify the Company's records to hide her conduct. When Rispoli decided to increase the amount she embezzled on a monthly basis, she chose to deceptively create a PayPal account in the name of her co-worker, also in order to hide her conduct. This long and continuous history of choices by Rispoli is inconsistent with detachment, and instead reveal that she treated embezzling from the Company as her real job.

Fourth, Rispoli's claim that "she gained little personally from the transactions," *id.*, is ludicrously at odds with the evidence. In fact, Rispoli used the

Company's AMEX to buy herself and her boyfriend personal and luxury items, take vacations, and generally live a life she otherwise would not have been able to afford.

Rispoli's PTSD did not contribute to the commission of her crime, and she is not eligible for a downward departure under U.S.S.G. § 5K2.13.

### B. The Sentencing Factors

The Government respectfully submits that a balanced consideration of the section 3553(a) factors requires a sentence of between 27 and 33 months' imprisonment.

1. Nature and Circumstances of the Offense

The nature and circumstances of the offense are straightforward and serious. Rispoli perpetrated a scheme to defraud her employer for several years, stealing more than $1,000,000 and using that money for her personal benefit. Instead of addressing her mental health issues and taking responsibility for her actions, she continued her fraudulent conduct for more than three years. In fact, when initially confronted by the FBI, she claimed that she was authorized by the Company to use the AMEX for personal use and concocted a story about partners "buy[ing] silence" from employees like her who allegedly witnessed inappropriate behavior. Needless to say, Rispoli lied to the FBI, her conduct was unauthorized, and her vague allegations against her co-workers were unfounded. That Rispoli eventually agreed to admit guilt is reflected by the significant reduction in her guidelines calculation for acceptance of responsibility.

Importantly, this is not a case where Rispoli made a single mistake or exercised bad judgment on an isolated occasion. In fact, she made hundreds of unauthorized personal charges on the AMEX and distinct cash transfers to PayPal and Venmo accounts that she controlled. Rispoli hid each of these instances of theft with her monthly falsification of records.

Furthermore, Rispoli's crime had real world consequences, as the Company makes clear in its victim impact statement:

> Rispoli's actions were not some victimless crime. Rispoli abused the trust placed in her by her employer and her colleagues, spending lavishly on luxuries while tampering with the Company's financial records to cover her tracks. The investigation to uncover her theft generated many hours of work for those same colleagues, on top of their regulate duties, and diverted corporate resources that could have been used more productively elsewhere.

Victim Impact Statement dated November 7, 2018. Just assessing the extent of Rispoli's fraud cost the Company $191,335, which stands in addition to the $1,098,176 she stole.

The sentence imposed should reflect the grim facts of the offense, whereby Rispoli, on hundreds of occasions and over more than three years, chose to steal from her employer then lie about it.

2. History and Characteristics

According to the Pre-Sentence Report, Rispoli grew up with supportive, caring parents, and described her childhood as "normal." PSR at 7. She graduated from college and obtained employment. *Id.* at 11. She currently has a substance abuse problem, and although she was given several opportunities by this Court to seek treatment with the support of Probation, she has been unable to sustain an alcohol-

free lifestyle for any significant period of time. In fact, knowing that she faced potential incarceration if she failed out of her last intensive in-patient treatment program, she continued to use alcohol and was expelled from the program. Even with a strong support system (both at home and through the Court), Rispoli has been unable to seriously address the problems she faces.

She also suffers from PTSD from witnessing the Boston Marathon bombing. Notably, Rispoli did not seek adequate mental health treatment until she was faced with possible incarceration after pleading guilty in this case.

While the Court must consider these facts—which are sad and make Rispoli more sympathetic than her offense conduct would otherwise—they do not warrant a below guideline sentence.

### 3. Seriousness of the Offense, Just Punishment, Respect for the Law

A sentence of between 27 and 33 months' would appropriately reflect the seriousness of Rispoli's offense, promote respect for the law, and provide just punishment. Rispoli perpetrated her scheme over a period of years, eventually stealing over $1,000,000 from the Company. Under the facts, Rispoli deserves a significant sentence of incarceration.

### 4. Specific and General Deterrence

A sentence of between 27 and 33 months' is appropriate in this case to deter Rispoli and others from committing similar financial crimes.

General deterrence serves an important function to prevent crimes of the sort committed by Rispoli. Unless those in a position to steal from an employer understand

that there are serious consequences for their actions, the temptation to steal cannot be eliminated. Individuals with access to their employers' financial accounts and the ability to siphon money undetected must see similarly situated persons, such as Rispoli, suffer real penal consequences that make the "cost of doing business" intolerable.

As such, in this instance, the Court should be seen to impose a significant term of imprisonment.

### C. Restitution

As part of the plea agreement, Rispoli agreed to make restitution to the victims of her crimes in an amount not less than $1,098,176. The Government respectfully requests that the Court order restitution in that amount.

## III. <u>CONCLUSION</u>

For the above reasons, the Government submits that a sentence of between 27 and 33 months' imprisonment is appropriate in light of all the section 3553(a) factors and is sufficient, but not greater than necessary, to meet the goals of sentencing.

                Respectfully submitted,

                JOHN H. DURHAM
                UNITED STATES ATTORNEY

                /s/_____

                HEATHER CHERRY
                ASSISTANT UNITED STATES ATTORNEY
                FEDERAL BAR NO. phv07037

                JONATHAN N. FRANCIS
                ASSISTANT UNITED STATES ATTORNEY
                FEDERAL BAR NO. phv05083

                157 CHURCH STREET
                NEW HAVEN, CT 06510

**Certificate of Service**

I hereby certify that on May 21, 2019, a copy of the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

                                                         ___/s/_____
                                                         HEATHER CHERRY
                                                         ASSISTANT UNITED STATES ATTORNEY